UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES RIVERA,

                           Plaintiff,

         -against-

ANNA M. KROSS CENTER, RIKERS ISLAND
DEPARTMENT OF CORRECTIONS,

                           Defendants.

10 Civ. 8696 (RJH)

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

      James Rivera ("Rivera"), a former prisoner, now released, brought this action under 28 U.S.C. § 1983 while he was incarcerated at the Anna M. Kross Center ("AMKC"), a New York City Department of Correction facility on Rikers Island. Rivera's complaint alleges mistreatment by unidentified prison officials. Before the Court is AMKC's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint. For the reasons that follow, the motion is granted.

## BACKGROUND

      Rivera was arrested for possession of crack cocaine on August 28, 2010. He was incarcerated at AMKC on Rikers Island. When Rivera arrived at AMKC, no permanent housing was available. In the interim, from August 29 through September 1, 2010, Rivera was housed in a facility known as the "bullpen."

      Rivera alleges that various conditions in the bullpen violated his constitutional rights. Specifically, Rivera alleges that he was denied medication for his HIV and methadone treatment; given water in a cup used by 60 other prisoners; forced to sleep on

1

a dirty floor with no blanket; prevented from bathing or washing; and given access only to a clogged toilet.  Rivera further alleges that his current housing area lacks soap, razors, toothpaste, and other unspecified "hygiene supplies."

Rivera's complaint refers to a "grievance" regarding "all of this matter[]s" [sic] that "f[e]ll on deaf ear[s]."  Indeed, Rivera attaches a grievance form dated September 2, 2010 in which he describes the aforementioned conditions.

Rivera filed this action on November 8, 2010 alleging that these conditions violated his constitutional rights.  On June 8, 2011, AMKC moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint on three grounds:  (1) Rivera has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e; (2) the New York City Charter bars suits against AMKC and the Department of Corrections; and (3) the complaint fails to state a claim for which relief can be granted.  In responding to the motion, Rivera requested that the Court order AMKC to identify the officers working in the "bullpen" on the dates in question.  On September 14, 2011, Rivera informed the Court that his address had changed and that he was now residing in an apartment in Brooklyn.  In a letter to Chambers dated October 31, 2011, Rivera confirmed his new address and informed the Court that he had been released from jail.

## LEGAL STANDARD

"Courts ruling on motions to dismiss must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Dickerson v. Mut. of Am.*, 703 F. Supp. 2d 283, 290 (S.D.N.Y. 2010).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*  (quoting *Twombly*, 550 U.S. at 557).

   "A document filed *pro se* is 'to be liberally construed,' and a '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Courts must "read[] such submissions 'to raise the strongest arguments they suggest.'"  *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  "However, even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'"  *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (quoting *Twombly,* 550 U.S. at 555).  *See also Andino v. Fischer*, 698 F. Supp. 2d 362, 376 (S.D.N.Y. 2010) ("While held to a less stringent standard, the *pro se* plaintiff is not relieved of pleading requirements, and failure to plead the basic elements of a cause of

action may result in dismissal."). Indeed, "pro se status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure." *Pandozy v. Segan*, 518 F. Supp. 2d 550, 554 (S.D.N.Y. 2007).

Where a motion is premised on the plaintiff's failure to exhaust his administrative remedies, the question is whether nonexhaustion is clear from the face of the complaint. That is because "failure to exhaust is an affirmative defense under the PLRA." *Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir. 2009) (citing *Jones v. Bock,* 549 U.S. 199, 216 (2007). If nonexhaustion is clear, a motion to dismiss should be granted. *Shaw v. City of New York*, No. 08-3997, 2009 WL 1110789, at *3 (S.D.N.Y. Apr. 21, 2009) (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).

Here, Rivera's complaint refers to a "grievance" regarding "all of this matter[]s" [sic] that "f[e]ll on deaf ear[s]" and attaches a grievance form dated September 2, 2010. Accordingly, the exhaustion issue appears on the face of the complaint and there is no need to convert the motion.

## DISCUSSION

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that prisoners exhaust all available administrative remedies before pursuing a lawsuit in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (exhaustion is required for "all inmate suits about prison life"); *Booth v. Churner*, 532 U.S. 731, 734 (2001) (exhaustion required before filing a Section 1983 claim for

monetary damages even though monetary damages are unavailable as an administrative remedy). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The PLRA's exhaustion requirement applies to Rivera, even though he is no longer incarcerated, because he *was* incarcerated at the time he filed his lawsuit. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004).

The Supreme Court has held that "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Merely "[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion." *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (internal quotation marks and citation omitted). Rather, to properly exhaust a claim, a prisoner must "exhaust all 'available' remedies, not just those that meet federal standards." *Woodford*, 548 U.S. at 85. That "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (emphasis in original) (quoting *Woodford*, 548 U.S. at 90). "Those procedural rules are "defined not by the PLRA, but by the prison grievance process itself." *Johnson*, 569 F.3d at 45 (quoting *Woodford*, 548 U.S. at 88). "The exhaustion inquiry thus requires that we look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).

"The New York City Department of Correction's Inmate Grievance Resolution Program ('IGRP') consists of five levels of review for inmate grievances, all of which must be exhausted for a prisoner to meet the exhaustion requirement." *Prince v. Latunji*,

5

746 F. Supp. 2d 491, 495 (S.D.N.Y. 2010). "After an inmate has submitted his grievance form, the Inmate Grievance Resolution Committee ('IGRC') has five business days in which to resolve the issue informally. If the IGRC is unable to reach a resolution, or if the grievant does not consent to the resolution proposed by the IGRC, then the inmate may request a formal hearing in front of the IGRC to present his complaint and call supporting witnesses." *Houston v. Horn*, No. 09 Civ. 801, 2010 WL 1948612, at *6 (S.D.N.Y. May 13, 2010) (Cote, J.).

"The inmate may also request a formal hearing if he does not receive any response from the IGRC within five business days. The IGRC must then issue a written decision addressing the validity of the inmate's grievance. If the inmate is unsatisfied with the IGRC's decision, he may appeal the decision to the commanding officer of the facility, then to the Central Office Review Committee ('CORC'), and finally to the New York City Board of Correction ('BOC')." *Id.*

"An inmate's administrative remedies are not exhausted until he proceeds through all five levels of the IGRP." *Id.*; *see also Prince*, 746 F. Supp. 2d at 495; *Marcello v. Dep't of Corrections*, No. 07 Civ. 9665, 2008 WL 2951917, at *3 (S.D.N.Y. July 30, 2008). Rivera, however, has only reached the first level. He has filed a grievance, but no more.

Rivera argues that "officials at [AMKC] are purposefully not responding to [his] grievance as [a] means to prevent [him] from seeking appropriate federal intervention." (Pl.'s Opp'n at 2.) It is true that that "in some circumstances, the behavior of the defendants may render administrative remedies unavailable." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). Indeed, the Second Circuit has devised three exceptions to

the requirement that the plaintiff exhaust administrative remedies. "[T]he same facts sometimes fit into more than one of these categories." *Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).[1]

First, "the court must ask whether administrative remedies were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citing *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)). Indeed, "[t]he PLRA does not require the exhaustion of all administrative remedies, but only those that are 'available' to the inmate." *Id.* at 667. "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'" *Id.* (quoting *Booth*, 532 U.S. at 738). Whether such a possibility exists turns on whether "the prison provided grievance procedures that inmates . . . could utilize" and whether threats rendered "all administrative remedies unavailable" or "some procedures that would ordinarily be available . . . effectively unavailable." *Hemphill*, 380

---

[1] As the Court has noted,

> [t]here is some doubt as to whether the *Hemphill* line of analysis has survived *Woodford v. Ngo*, 548 U.S. 81 (2006), and the Second Circuit has yet to decide the issue. *See Macias v. Zenk*, 495 F.3d 37, 43 n.1 (2d Cir. 2007) (declining to decide "what effect *Woodford* has on *Hemphill*'s holding that where administrative procedures are confusing 'a reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow procedural rules to the letter.'") (quoting *Hemphill*, 380 F.3d at 690); *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) ("We need not determine what effect *Woodford* has on our case law."). In *Woodford*, the Supreme Court held that prisoners must "properly" exhaust administrative remedies, which entails "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90–91. Courts in this circuit have acknowledged the tension between *Woodford* and the *Hemphill* analysis, but have continued to use the *Hemphill* test in the absence of circuit authority to the contrary. *See, e.g.*, *Harrison v. Goord*, No. 07-1806 (HB), 2009 WL 1605770, at *6 n.6 (S.D.N.Y. June 9, 2009); *Winston v. Woodward*, No. 05-3385 (RJS), 2008 WL 2263191, at *6 (S.D.N.Y. May 30, 2008) (applying the three exceptions and collecting district court cases doing the same). This Court will do likewise.

*Kasiem v. Switz*, 756 F. Supp. 2d 570, 576 n.5 (S.D.N.Y. 2010).

F.3d at 686–87.  The test as to whether administrative remedies are available is "an objective one:  that is, would 'a similarly situated individual of ordinary firmness' have deemed them available."  *Id.* at 688.

Where "the record reflects that [Rivera] continued to file grievance after grievance during the period of alleged unavailability, it is apparent that a reasonable person of ordinary firmness in [Rivera's] position, as well as [Rivera] himself, would not have thought that administrative remedies were unavailable, and [Rivera] has not satisfied the first prong of the *Hemphill* analysis."  *Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010); *see also Amador v. Superintendents of Dep't of Correctional Servs.,* No. 03 Civ. 0650(KTD), 2007 WL 4326747, at *8 (S.D.N.Y. Dec. 4, 2007); *Harrison v. Goord,* No. 07 Civ. 1806(HB), 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009).  That is so here.  Rivera has submitted copies of several grievances he has filed.

To be sure, Rivera appears to believe that the grievance process will not be fruitful because he has not received any response to his grievance.  However, the relevant question is not whether Rivera believes that the grievance process will be futile but whether that belief is reasonable.  In that regard, it is notable that "a number of federal circuit courts have held that when a grievant files a complaint and receives no response from prison authorities within the time limits established by the grievance procedures, the remedies associated with those procedures may be considered 'unavailable' for purposes of exhaustion. . . ."  *Marcello*, 2008 WL 2951917, at *3 (citing *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Foulk v. Charrier,* 262 F.3d 687, 698 (8th Cir. 2001); *Underwood v. Wilson,* 151 F.3d 292, 295 (5th Cir. 1998)).  *Cf. Brown v. Valoff*, 422 F.3d 926, 943 n.18 (9th Cir.

2005) ("Delay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available.").

The Second Circuit has expressly declined those decisions' holding as the law of this Circuit. *See Hemphill*, 380 F.3d at 686 n.6. In *Hemphill*, the plaintiff sent a letter to the facility superintendent rather than proceeding via the grievance process. In a footnote, citing the above authority, the Second Circuit stated that "if Hemphill wrote in a timely fashion to the Superintendent pursuant to a possibly valid interpretation of DOCS grievance procedures, there might be a question as to the availability of remedies, since Hemphill received no response to his letter, and there is no indication in the record that his grievance was ever recorded, as required by DOCS regulations." *Id.* at 686 n.6. However, the Court of Appeals "express[ed] no view on whether Hemphill's allegations [could] support such a theory." *Id.*

However, even if the Second Circuit in *Hemphill* left the door open in some cases to equating a facility's failure to respond with unavailability, the Court finds no reason to do so here. *Hemphill* involved grievance procedures established by the New York State Department of Correctional Services pursuant to which "the burden of scheduling a formal hearing is on prison administrators." *Marcello*, 2008 WL 2951917, at *4 n.6 (citing N.Y. Cornp. Codes R. & Regs. Tit. 7, § 701.5(b)). In contrast, "New York City DOC regulations explicitly place the burden of requesting a formal hearing on the grievant." *Marcello*, 2008 WL 2951917, at *3. Indeed, the regulations applicable here provide that "[i]f no informal resolution is reached within . . . five (5) days [of filing the grievance] . . . the inmate has five (5) days from notification of disposition to request a hearing" and "[i]f the inmate has not received any response within the same five (5) day

9

period, the inmate should go to the Grievance Office . . . and indicate . . . that a hearing is requested." DOC Directive § IV(B)(1)(d). *Cf. Hemphill*, 380 F.3d at 682 ("The IGRC must convene a hearing, if necessary, within seven working days, and issue a written decision within two days of the hearing.").[2]

Consistent with that requirement, courts in this Circuit have repeatedly held that a prisoner in custody of the New York City Department of Corrections who has not received a response to a grievance but has not requested a hearing has not exhausted his administrative remedies for purposes of the PLRA. *See, e.g.*, *Houston*, 2010 WL 1948612, at *6 ("[H]aving heard no response from the IGRC within five working days, Houston was required to request a formal hearing. Because Houston has offered no evidence that he requested a formal hearing or that a formal hearing was ever held, Houston did not properly exhaust his administrative remedies with respect to these two grievances."); *Torres v. Carry*, 672 F. Supp. 2d 338, 343 (S.D.N.Y. 2009); *Chisholm v. New York City Dep't of Correction*, 2009 WL 2033085, at *2 (S.D.N.Y. July 13, 2009) (same); *James v. Hernandez*, 2009 WL 1979261, at *3 (S.D.N.Y. July 9, 2009) (same); *Marcello*, 2008 WL 2951917, at *4 ("Therefore, plaintiffs should have requested formal hearings from the Grievance Office when they received no response to their initial grievance forms. Their failure to do so contravened DOC procedures, and bars this action."); *Hernandez v. Coffey,* No. 99 Civ. 11615(WHP), 2003 WL 22241431, at *4

---

[2] Since Rivera has not requested a hearing, the issue in this case is not whether prison officials' purported failure to respond to a grievance until the time to take the next required administrative step has expired. Therefore, this case is not like one "where the prisoner obtains a favorable disposition of his grievance, only to find, after the time for filing an administrative appeal has expired, that the relief he had won was not forthcoming." *Cf. Giano*, 380 F.3d at 677 (citing *Abney*, 380 F.3d 663 (holding that prison officials' delay in implementing decision in favor of prisoner until after time to appeal had expired "rendered administrative relief 'unavailable' under the PLRA")).

(S.D.N.Y. Sept. 29, 2003) ("where a prisoner files a grievance, and the IGRC does not respond, the inmate must nevertheless exhaust his appeals to the facility superintendent and the CORC").

The Tenth Circuit reached a similar result in *Jernigan v. Stuchell,* 304 F.3d 1030 (10th Cir. 2002). There, the plaintiff inmate had submitted a grievance but "received no response within the fifteen day response time contained in the grievance policy. . . ." *Id.* at 1032. When the plaintiff sought to appeal the grievance, prison officials "rejected the appeal because there was no response from the warden and told [the plaintiff] that he had ten days in which to cure that deficiency." *Id.* However, "[i]nstead of attempting to cure, [the plaintiff] filed [a] lawsuit." *Id.* The district court dismissed the suit for failure to exhaust administrative remedies pursuant to the PLRA and the Tenth Circuit affirmed. While the court acknowledged that "the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable," the court found for two reasons why that that was "not what happened" in the case before it. *Id.* First, the plaintiff "was given ten days to cure the deficiency in question which no doubt would have involved alerting prison officials of the lost or misfiled grievance." *Id.* And second, like the policy applicable here, the grievance policy "provide[d] that if an inmate does not receive a response from the warden within thirty days after submission of the grievance, the inmate may send the grievance with evidence of its prior submission to an administrative review authority." *Id.* at 1032-33.

The Court finds these decisions persuasive in the absence of a contrary directive from the Court of Appeals and finds no reason to extend the *Hemphill* framework to reach a different result. This is not a case where prison officials have prevented Rivera

from pursuing additional steps required by administrative grievance procedures by refusing to take some action or issue some decision that the procedures require Rivera to appeal within a specified time.  Rather, this is a case where the applicable procedures expressly contemplate officials' inaction and require prisoners to request a hearing where prison officials have not acted.

Under *Hemphill*, a court assessing exhaustion also "should determine whether the defendants forfeited the defense by failing to raise or preserve it and whether the defendants' actions inhibiting the inmate's exhaustion of remedies would estop the defendants from raising the exhaustion defense." *Kasiem*, 756 F. Supp. 2d at 576 (citing *Hemphill*, 380 F.3d at 686).   Estoppel applies where "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible." *Winston v. Woodward*, No. 05-3385 (RJS), 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (quoting *Carini v. Austin*, No. 06-5652 (NRB), 2008 WL 151555, at *3 (S.D.N.Y. Jan. 14, 2008)).

Rivera has not alleged any "threats, beatings, denials of grievance forms, or by other misconduct deterring him from fulfilling the requisite procedure." *Kasiem*, 756 F. Supp. 2d at 577.  Rivera argues in his opposition that AMKC has "no grievance form, no investigation form, no Central Office Review Committee Form, no Inmate Resolution Program form, no transmittal to CORC form," and "no warden decision form."  (Pl.'s Opp'n at 6.)   However, that contention is strongly undermined by the fact that Rivera has attached completed grievance forms to his complaint and relies on the allegation that prison officials have ignored those forms.  Further, the forms show that Rivera "actually did pursue grievances . . . throughout the time period in question, defeating any inference

from his allegations that he reasonably understood the grievance process to be futile." *Kasiem*, 756 F. Supp. 2d at 577.

What is more, Rivera's argument and the correspondence he has attached to his opposition show that (1) Rivera has some understanding of the applicable grievance procedures; and (2) Rivera has the ability to correspond with the authorities responsible for various levels of review. The applicable procedures required Rivera, *inter alia*, to request a formal hearing when he received no response to his grievance. Whether or not an official form was available—an allegation that Rivera makes for the first and only time in his opposition—Rivera's own correspondence with IGRP officials and his reference to having written the warden shows that there was no impediment to his contacting prison officials to request a hearing. Yet while it might be a close question whether an inmate who has requested a hearing through informal channels has complied with the applicable procedures, *cf. Hemphill*, 380 F.3d at 686 n.6, there is no evidence that Rivera so much as mentioned a hearing on any form or in any correspondence. Moreover, while some courts have held that procedures are available to an inmate who requested but was denied a form, *see, e.g.*, *Gayle v. Benware*, No. 08 Civ. 8017, 2009 WL 2223910, at *1 (S.D.N.Y. July 27, 2009); *Smith v. Westchester County Dep't of Corrections*, No. 07 Civ. 1803, 2008 WL 361130, at *3 (S.D.N.Y. Feb. 7, 2008); *O'Connor v. Featherston,* No. 01 Civ. 3251, 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002), Rivera does not claim and there is no evidence to show that Rivera requested but was denied a form that he now contends was unavailable or complained that such a form

was unavailable. In those circumstances, the Court has no basis to conclude that prison officials rendered the applicable procedures unavailable or futile.[3]

Finally, *Hemphill* instructs that a court "should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" *Hemphill*, 380 F.3d at 686 (quoting *Giano*, 380 F.3d at 676). The Second Circuit has specified "a reasonable misunderstanding of the grievance procedures" as one example of "special circumstances." *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2006). Rivera has not alleged such a misunderstanding. On the contrary, his opposition demonstrates that he has some understanding of the applicable procedures. Nor does Rivera attempt to justify his failure to proceed beyond filing a grievance other than to argue that prison officials have not responded to his grievances. However, the Second Circuit has not recognized that failure as a special circumstance. And where the relevant administrative procedures require a prisoner who has not received a response to request a hearing and courts in this district have held that prisoners who do not make such a request have not properly exhausted their administrative remedies, the Court is reluctant to extend the already uncertain *Hemphill* framework under the guise of "special circumstances."

In sum, Rivera has completed only one step in exhausting his administrative remedies. The applicable regulations of the New York City Department of Corrections require a prisoner to do more, including requesting a hearing from the IGRP. And

---

[3] Rivera's unsubstantiated allegation in a post-briefing letter that he has not received a response to his grievance because the grievance office is closed does not change that conclusion. Even if the allegation is true, nothing about it explains why Rivera could not request a hearing via some form of communication.

14

Rivera's case does not qualify for any exception to that requirement.  The PLRA therefore requires dismissal of Rivera's action.

The remaining question is whether to dismiss Rivera's action with, or without, prejudice.  "Failure to exhaust administrative remedies is often a temporary, curable procedural flaw.  If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit."  *Berry*, 366 F.3d at 87.  In such circumstances, the Second Circuit has "recognized that dismissal without prejudice is appropriate."  *Id.*  On the other hand, dismissal with prejudice is appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Id.* at 88.  In *Berry*, the plaintiff-inmate brought suit against New York City Department of Corrections officials without first exhausting his administrative remedies.  Prior to the time he brought suit, and for approximately five months thereafter, the plaintiff was in the custody of the New York City Department of Corrections.  He subsequently was transferred to state custody and thus no longer had access to the administrative remedies provided by the City Department of Corrections.  The Second Circuit held that the dismissal of his action with prejudice for failure to exhaust administrative remedies was proper.  *Id.*  The court reasoned that the plaintiff had many months, both before and after filing his suit, to pursue his grievances through the City Department of Corrections' administrative procedures and that the subsequent unavailability of those procedures to the plaintiff warranted a dismissal with prejudice. *See id.*  The court held, "Under these circumstances and in the absence of any justification for not pursuing available remedies,

[plaintiff's] failure to pursue administrative remedies while they were available precluded his federal lawsuits, and they were properly dismissed with prejudice." *Id*. Here, the City Department of Corrections' administrative procedures have become unavailable to Rivera because he no longer is incarcerated. Rivera had nearly a year in prison to pursue his administrative claims to exhaustion, but he failed to do so. Rivera had two months after filing his initial grievances and before filing his complaint during which he could have requested a hearing, the second step in the administrative process. Rivera also had, much like the plaintiff in *Berry*, an additional ten months after filing his complaint where he could have pursued his administrative remedies. Thus, Rivera had ample time to pursue his administrative remedies. Moreover, as discussed above, he has not shown that his failure should be excused. Under these circumstances, Rivera's complaint should be dismissed with prejudice. *See, e.g.*, *Prescott v. Annetts*, No. 09 Civ. 4435, 2010 WL 3020023, at *7-8 (S.D.N.Y. July 22, 2010) (dismissing complaint with prejudice for failure to exhaust where plaintiff was released from prison more than two years after the events that gave rise to his complaint); *Finger v. McGinnis*, No. 99 Civ. 9870, 2004 WL 1367506, at *5 (S.D.N.Y. June 16, 2004) (same where plaintiff had nine months to exhaust prior to filing suit).

## CONCLUSION

For the foregoing reasons, Defendants' motion **[14]** to dismiss this action with prejudice is GRANTED.

SO ORDERED.

Dated: New York, New York
      February **7**, 2012

_____
Richard J. Holwell
United States District Judge